Mark S. Schwarz (14312)
E-mail: mark@pinpointlaw.com
**PINPOINT LAW, PLLC**
75 E. 400 S., Ste. 201
Salt Lake City, UT 84111
Telephone: (801) 413-3442
Facsimile: (801) 610-2121

For Michael Yeoman and Sean Myles, individually
and for all other individuals similarly situated

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MICHAEL YEOMAN and SEAN MYLES, individually and on behalf of all other individuals similarly situated, <br><br> *Plaintiffs,* <br><br> *v.* <br><br> VOLKSWAGEN GROUP OF AMERICA, INC.; VOLKSWAGEN OF AMERICA, INC., and DOES 1 through 10, inclusive, <br> *Defendants.* | **CASE NO.: 2:15-cv-00692-DBP** <br><br> **COMPLAINT FOR PROPOSED CLASS ACTION** <br> 1.  **Fraud** <br> 2.  **Civil Action for Communications Fraud (Utah Code § 78B-6-1701)** <br> 3.  **Negligent Misrepresentation** <br> 4.  **Violation of Utah Consumer Sales Practices Act (Utah Code §§ 13-11-1, et seq.)** <br> 5.  **Negligence** <br> 6.  **Breach of Express Warranty of Merchantability** <br> 7.  **Breach of Implied Warranty of Merchantability** <br> 8.  **Magnuson Moss Warranty Act, (15 U.S.C. § 2301 et seq.)** <br> 9.  **Unjust Enrichment** <br> 10.  **Violation of Implied Warranty of Merchantability (Utah Code § 70A-2-314)** <br> 11.  **Breach of Contract** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Michael Yeoman and Sean Myles, individually and on behalf of all others similarly situated, through undersigned counsel, who complain against Defendants VOLKSWAGEN GROUP OF AMERICA, INC., AND VOLKSWAGEN OF AMERICA, INC. (collectively "Defendants" or "Volkswagen") and DOES 1 through 10, and each, under information and belief, allege as follows.

## INTRODUCTION

1.      Plaintiffs bring this class action on behalf of themselves and all other owners, wherever situated in the United States, of certain diesel vehicles manufactured by Volkswagen for model years 2009-2015 ("Claims Period"). The Subject Vehicles consist of approximately 482,000 diesel Volkswagen and Audi vehicles manufactured and sold and or leased in the United States since 2009.

2.      During the Claims Period Defendants manufactured and designed a system to circumvent United States emission standards. Plaintiffs allege under information and belief that Defendants did so because Defendants were unable comply with federal and state emissions standards and meet the standards of their advertising and marketing for their "clean" and "high performing" passenger vehicles. Defendants' advertising was false and misleading and designed to deceive. Under information and belief, Defendants knew that to comply with the emission standards would mean that Defendants' products would underperform when compared to competing passenger vehicles.

3.      In 2007, the U.S. announced tougher curbs on the emission of nitrogen oxide (NOx), and VW suspended sales of its diesel cars in the U.S. But Volkswagen had a solution. According to press reports, in Volkswagen's June, 2007 "Powertrain and Fuel Strategy,"

Volkswagen said independence from fossil fuels lay at the end of the industry's evolutionary path, but existing technology would still dominate, so VW would concentrate on developing it to fit new standards. "New powertrains, including an engine concept developed for use in the USA, under the working title 'BlueTDI,' are already in the prototype stage," the document said. "These engines will fulfill the toughest emissions laws in the world - even the so-called 'Tier2 Bin5' in California, one of the most stringent emissions standards in the world." Volkswagen marketed the Subject Vehicles with high fuel efficiency and performance, with low emissions, surpassing comparable competing gasoline powered vehicles.

4.      But Volkswagen's public statements and marketing were untrue. Volkswagen's solution to sell more diesel vehicles in the U.S. was to include software in the Subject Vehicles that would circumvent EPA emission standards for certain air pollutants. The software was a "defeat device" that was manufactured to evade Clean Air Act standards. Using a sophisticated software algorithm on the Subject Vehicles, Defendants programmed the vehicles to detect when the cars were undergoing official emissions testing and to turn full emissions controls on only during the test. According to an investigation by the Environmental Protection Agency ("EPA"), the effectiveness of the vehicle's pollution emissions control devices is greatly reduced during all normal driving conditions resulting in cars that meet emissions standards in laboratory or testing stations, but do not during normal operations, and emit NOx at up to forty times the standards. According to the EPA, the software produced by Volkswagen is a "defeat device," as defined by the Clean Air Act.

5.      The conduct included not only deceiving unsuspecting car buyers, but lying to federal investigators. According to press reports, for nearly a year, Volkswagen officials engaged

in a cover up, lying to the EPA alleging that discrepancies between the formal air-quality tests on its diesel cars and the much higher pollution levels out on the road resulted from technical errors, not a deliberate attempt to deceive.

6.      In early September, 2015 Defendant Volkswagen admitted to the EPA that the diesel vehicles it sold in the United States had software deliberately designed to cheat on emissions tests. As reported in the press, "The company was evidently concerned that actually meeting the federal emissions standards would degrade the power of the engines, which it marketed as comparable in performance to gasoline engines. Meeting the standard would also undercut the fuel efficiency that is one of the main selling points of diesels."

7.      Purchasers of the Subject Vehicles with the "defeat device" did not know of the defect or the deception. News of the fraud broke Friday, September 18, 2015, when the EPA issued a Notice of Violation and the State of California Air Resources Board ("CARB") released a letter to Defendants. Copies of the EPA notice and the CARB letter are attached this Class Action Complaint as Exhibits A and B, respectively. On September 21, 2015, Volkswagen's chief executive issued an "apology" and the company says it will not sell its 2015 and 2016 diesel cars in the United States. The company is recalling the Subject Vehicles.

8.      According to the U.S. EPA, Volkswagen installed its "defeat device" in the in at least these diesel models of its passenger vehicles: Model Year ("MY") 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3 (collectively "the Subject Vehicles"). By this action Plaintiffs seek recovery for all U.S. purchasers of diesel passenger vehicles during the Claims Period whether currently identified by the EPA or not. As reported in the EPA's press release, the California Air

Resources Board has a current ongoing investigation examining, among other things, whether the Defendants installed "defeat devices" in other models during the Claims Period. Plaintiffs reserve the right to amend this complaint as such facts are discovered.

### PARTIES

9.      Michael Yeoman is an adult citizen of the United States residing in Salt Lake City, Utah.

10.      Sean Myles is an adult citizen of the United States residing in Salt Lake City, Utah.

11.      Volkswagen Group of America, Inc. ("Volkswagen") is a corporation doing business in each state in the United States (including Utah) and the District of Columbia. It is organized under the laws of New Jersey, with its principal place of business at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171. Volkswagen is a citizen of New Jersey and Virginia under 28 U.S.C. § 1332(d)(10).

12.      Volkswagen of America, Inc. ("Volkswagen") is likewise a corporation organized under the laws of New Jersey, with its principal place of business at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171. Volkswagen is therefore a citizen of New Jersey and Virginia.

13.      At all relevant times, Volkswagen designed, tested, manufactured, distributed, marketed, advertised, sold, leased, and warranted the Subject Vehicles under the Volkswagen and Audi brand names throughout the nation. Volkswagen designed the engines and engine control systems in the Subject Vehicles, including the "defeat device" cited by the EPA in its investigation. Volkswagen also drafted, developed and disseminated the owners' manuals and

warranty booklets, advertisements, and other promotional materials relating to the Subject Vehicles.

14.     Plaintiffs are informed and believe, and based thereon allege, that each of the preceding Volkswagen Defendants pertinent to this action acted as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants. All acts and omissions complained of were performed within the course and scope of the employment, service and/or agency and with the consent of each of the Defendants mentioned herein. All actions of each Defendant herein alleged were ratified and approved by the directors, officers and managing directors of Defendants.

<u>**JURISDICTION AND VENUE**</u>

15.     This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

16.     Plaintiffs are putative class members and are of diverse citizenship from one defendant; there are over 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

17.     This Court has personal jurisdiction over Defendants because they conduct business in Utah, and have sufficient minimum contacts with Utah. At all relevant times, Volkswagen distributed, marketed, advertised, sold, leased, and warranted the Subject Vehicles under the Volkswagen and Audi brand names in Utah and throughout the nation.

18.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this

District, and because Defendants have caused harm to Class members residing in this District, including Plaintiffs.

**ANY STATUTES OF LIMITATION OR**
**STATUTES OF REPOSE HAVE BEEN TOLLED**

19.     All applicable statutes of limitation or statutes of repose are, and have been, tolled under the doctrines of fraudulent concealment, delayed discovery, equitable estoppel and equitable tolling.

20.     Defendants designed manufactured and programmed the Subject Vehicles in a way and manner to evade detection and to turn full emissions controls on only during standard emissions test. Plaintiffs and all class members had no knowledge, and could not have had knowledge, of the facts related to the design and manufacturing of the Subject Vehicles. Plaintiffs and the Class Members did not know of the installation of the "defeat device" in the Subject Vehicles. Volkswagen also drafted, developed and disseminated the owners' manuals and warranty booklets, advertisements, and other promotional materials relating to the Subject Vehicles and none contained information related to the "defeat device" installed to circumvent regulatory requirements.

21.     Through exercising reasonable diligence, and within any statutes of limitation and statute of repose, Plaintiffs and members of the proposed Class could not have discovered that Volkswagen was concealing the "defeat devices" from prospective customers and misrepresenting the emissions and performance features of its vehicles, including but not limited to its use of defeat devices to increase performance. Defendants intentionally concealed the existence of the "defeat devices" from prospective purchasers while touting information known to be materially incomplete about the performance and fuel efficiency of these vehicles.

Defendants intended to create a market for their vehicles by intentionally providing inaccurate and incomplete marketing information knowing that prospective purchasers would be deceived by failing to fully disclose.

22.     The conduct to conceal the facts included deceiving unsuspecting car buyers and federal and state regulators. Plaintiffs are informed and believe that for nearly a year, Volkswagen officials engaged in a cover up, lying to the EPA, alleging that discrepancies between the formal air-quality tests on its diesel cars and the much higher pollution levels out on the road resulted from technical errors, not a deliberate attempt to deceive.

23.     Plaintiffs are informed and believe that Volkswagen did not admit to its fraudulent concealment until industry research groups discovered the difference between Volkswagen's emissions in testing laboratories and in normal use. The groups brought the defeat device issue to the attention of the EPA which undertook tests on the vehicles and discovered the defeat device.

24.     Plaintiffs and the Class members did not know of facts, nor could they have reasonably discovered facts, that would have caused a reasonable person to suspect that Volkswagen intentionally altered its vehicles with sophisticated software, and failed to report information within its knowledge to federal and state authorities, its dealerships, or consumers, all to conceal that its products could not perform to the minimum required performance standards and meet environmental requirements. A reasonable and diligent investigation by a reasonable vehicle purchase could not have disclosed that Volkswagen had designed such a system or that it knew of its deception and that it concealed that information, which was discovered by Plaintiffs

on or about September 20, 2015. Volkswagen is estopped from relying on any statutes of limitations or statutes of repose in defense of this action.

25.     Under the doctrine of equitable tolling any statute of limitation or statute of repose have been tolled to the earliest date of Defendants use of a defeat device in its diesel passenger vehicles.

## FACTUAL ALLEGATIONS

**Defendants' Wrongdoing And Plaintiffs' Damages**

26.     Defendant designed, manufactured, marketed and sold defective cars could not meet minimum performance and mileage requirements without alterations to the emissions control systems and misled consumers and regulators about the performance of the vehicle, the fuel efficiency, and the emissions control.

27.      Defendants have touted performance and environmental compliance for years. This "green" strategy is seen in it marketing and press releases. In 2013, Defendants claimed that "[m]ore than 75 percent of the diesel engines that are sold in the passenger car and SUV segments in the United States can be found under the hoods of Volkswagen models. Ever since 1977, when Volkswagen first offered a diesel in the rabbit, the company has sold more than a million cars and SUVs powered by these engines in the U.S. . . . So far in 2013, Volkswagen has sold 56,480 TDI Clean Diesel cars, representing nearly a quarter of the cars it sells. Volkswagen offers Clean Diesel technology in seven different models, six of which get an EPA estimated fuel economy rating of 40 mpg or more on the highway." Press Release August 9, 2013.

28.     Further, Defendants claimed in 2013: "The renewable diesel evaluation program is part of Volkswagen's global strategy to become one of the world's most environmentally

friendly automakers by 2018. From a product perspective, the company seeks to reduce passenger fleet $CO_2$ with a goal of cutting emissions by 90 percent by 2015, improving fuel efficiency by 10-15 percent for every new model as compared to its predecessor, and by making other significant environmental improvements for each new model that's introduced." – Press Release June 29, 2015.

29.     Defendants claimed in 2015 that they broke a Guinness World Record, stating: "2015 Golf TDI Clean Diesel, part of the family of vehicles that won the 2015 North American Car of the Year, has set a new GUINNESS WORLD RECORDS achievement for the "lowest fuel consumption- 48 U.S. contiguous States for a non-hybrid car" with a remarkable 81.17 mpg. Traveling 8,233.5 miles around America is 16 days on $294.98 of Shell Diesel fuel, the Golf beat the previous mark of 77.99 mpg by more than 3 mpg, and also beat the hybrid vehicle record of 74.34 mpg by more than 6 mpg." – Press Release July 8, 2015.

30.     "Covering 8,233.5 miles on just 101.43 gallons of Clean Diesel fuel is a remarkable accomplishment, and solid proof of the efficiency and fuel economy of Volkswagen's TDI Clean Diesel vehicles." "The 2015 Golf TDI uses Volkswagen's advanced turbocharged and direct-injection Clean Diesel engine to achieve an EPA estimated highway fuel economy of 45 miles per gallon when equipped with the six-speed manual transmission." – Press Release July 8, 2015.

31.     The Volkswagen advertisement strategy was to market its diesel vehicles as low-emission, fuel-efficient cars. As a result Volkswagen has become the largest seller of diesel passenger vehicles in the United States. Defendant's success sought to portray the diesel cars as "clean" and "green" vehicles and to win "green" awards.

32.     On its website Volkswagen Group of America stated that it takes "environmental responsibility very seriously. When it comes to making our cars as green as possible, Volkswagen has an integrated strategy focused on reducing fuel consumption and emissions, building the world's cleanest diesel engines and developing totally new power systems, which utilize new fuel alternatives."

33.     According to the September 18, 2015 EPA Notice of Violation ("NOV") (Exhibit "A"), Defendant installed sophisticated software in the Volkswagen and Audi diesel vehicles sold in the United States that detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test. At all other times that the vehicle is running, however, the emissions controls are deactivated, meaning that pollution is freely released into the environment at levels that exceed those allowed by federal and state clean air regulators. This software produced and used by Volkswagen is a "defeat device" as defined by the Clean Air Act.

34.     As stated in the NOV:

Specifically, VW manufactured and installed software in the electronic control module (ECM) of these vehicles that sensed when the vehicle was being tested for compliance with EPA emission standards. For ease of reference, the EPA is calling this the "switch." The "switch" senses whether the vehicle is being tested or not based on various inputs including the position of the steering wheel, vehicle speed, the duration of the engine's operation, and barometric pressure. These inputs precisely track the parameters of the federal test procedure used for emission testing for EPA certification purposes. During EPA emission testing, the vehicles' ECM ran software which produced compliant

emission results under an ECM calibration that VW referred to as the "dyno calibration" (referring to the equipment used in emissions testing, called a dynamometer). At all other times during normal vehicle operation, the "switch" was activated and the vehicle ECM software ran a separate "road calibration" which reduced the effectiveness of the emission control system (specifically the selective catalytic reduction or the lean NOx trap). As a result, emissions of NOx increased by a factor of 10 to 40 times above the EPA compliant levels, depending on the type of drive cycle (e.g., city, highway).

***

VW knew or should have known that its "road calibration" and "switch" together bypass, defeat, or render inoperative elements of the vehicle design related to compliance with the CAA emission standards. This is apparent given the design of these defeat devices. As described above, the software was designed to track the parameters of the federal test procedure and cause emission control systems to underperform when the software determined that the vehicle was not undergoing the federal test procedure.

***

VW's "road calibration" and "switch" are AECDs that were neither described nor justified in the applicable COC applications, and are illegal defeat devices. Therefore each vehicle identified by the table below does not conform in a material respect to the vehicle specifications described in the COC application. As such, VW violated section 203(a)(1) of the CAA, 42 U.S.C. § 7522(a)(1), each time it sold, offered for sale, introduced into commerce, delivered for introduction into commerce, or imported (or caused any of the foregoing with respect to) one of the hundreds of thousands of new

motor vehicles within these test groups. Additionally, VW violated section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), each time it manufactured and installed into these vehicles an ECM equipped with the "switch" and "road calibration."

35.     Plaintiffs and each of the members of the Class have been, and will continue to be damaged by the acts and omissions of Defendants. In order to attain the performance and mileage criteria touted by Defendants in the marketing and promotion of these vehicles, the emission systems have been altered. Upon information and belief, an EPA mandated repair to comply with the emissions standards will reduce the performance standards of the vehicles below the standards touted by the Defendants in their advertising, and promotional materials. Plaintiffs allege under information and belief, that compliance with the emissions standards will substantially degrade performance characteristics, including speed, horsepower and mileage efficiency. Upon information, there is no "fix" that will return the vehicles to the standards touted by Defendants in their advertising and promotional materials. Plaintiffs and the Class have suffered damages including but not limited to the cost to repair the Subject Vehicles to a level that is not only EPA compliant, but meets the technical performance standards advertised and marketed by Defendants. Class members have suffered actual harm and damages because their vehicles no longer perform as they did when purchased and as advertised. It is now public knowledge that the Subject Vehicles have emissions deficiencies. As result, without a proper fix, some class members will be unable to register their vehicles in certain states because the "defeat device" will be disabled by the testing agency at the time of testing to get an accurate pollution reading. Upon information and belief, the reading will not pass emission standards. The EPA

13

will not approve the sale of 2016 models of the vehicles unless Defendants can provide proof of compliance with EPA standard when the defeat device is turned off.

36.     In addition, Plaintiffs and the class have suffered a diminution in value of the Subject Vehicles, not only from the cost to repair the vehicles but the "stigma" damages that are, and will continue to be associated with the Subject Vehicles, whether or not a recall succeeds in making the vehicles EPA compliant. Besides the extent that the vehicles no longer performed as mileage efficient as sold, Plaintiffs and the Class will suffer continual damages in increased fuel costs.

**Plaintiffs' Facts**

37.     Plaintiff Michael Yeoman, of Salt Lake City, Utah, purchased a new from 2012 Volkswagen Golf TDI the Southtowne Volkswagen Dealership, in Utah on or about June of 2012, spending over $29,000 in lease and purchase payments.

38.     Plaintiff Yeoman viewed marketing and advertising about the vehicle before deciding to purchase the diesel vehicle. Plaintiff Yeoman read and reviewed information described the vehicle's fuel efficiency. Plaintiff relied on the representations of Volkswagen on numerous types of written representations, including but not limited to the vehicle sticker and mileage representations to decide to purchase the vehicle. Plaintiff relied on Defendant's written advertising and statements that the diesel Subject Vehicle was a clean, low-emission vehicle, high MPG, with a long useful life. Plaintiff understood and assumed that the vehicle complied with all emission standards and that its performance would not be affected by the compliance with emission requirements. Had Plaintiff known the facts, including that the way Volkswagen

achieved the performance and mileage criteria was to cheat on the emissions system by installation of "defeat devices" he would not have purchased the vehicle.

39.     Plaintiff Sean Myles, of Salt Lake City, Utah, purchased a new 2011 Volkswagen Golf TDI from Strong Volkswagen, in Salt Lake City, Utah, on or about June, 2011, spending approximately $25,000.

40.     Plaintiff Myles viewed marketing and advertising about the vehicle before deciding to purchase the diesel vehicle. Myles read and reviewed information from Volkswagen that described the vehicle's fuel efficiency, performance, and "clean" diesel engine. Plaintiff relied on the representations of Volkswagen on numerous types of written representations, including but not limited to the vehicle sticker and mileage representations to decide to purchase the vehicle. Myles relied on Defendant's written advertising and statements that the diesel Subject Vehicle was a clean, low-emission vehicle, with a long useful life, above average mileage for a diesel, and high performance. Myles understood and assumed that the vehicle complied with all emission standards and that its performance would not be affected by the compliance with emission requirements. Had Myles known the facts, including that the way Volkswagen achieved the performance and mileage criteria was to cheat on the emissions system by installation of "defeat devices," he would not have purchased the vehicle.

## CLASS ACTION ALLEGATIONS

41.     Plaintiffs sue on behalf of themselves and as a class action, under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of these Class:

All persons or entities in the United States who are current or former owners and/or lessees of a "Subject Vehicle" including, without limitation: Model Year ("MY") 2009-

2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015

VW Passat; and MY 2009-2015 Audi A3. ("the Class")

42.     As a subclass, Plaintiffs bring this on behalf of all Utah members of the Class.

("Utah Subclass").

43.      Excluded from the Class are Volkswagen and its subsidiaries and affiliates; all

persons who make a timely election to be excluded from the Class; governmental entities; and

the judge to whom this case is assigned and his/her immediate family and any personal injury

claims. Plaintiffs reserve the right to revise the Class definition based upon information learned

through discovery.

44.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because

Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as

used to prove those elements in individual actions alleging the same claim.

45.     This action has been brought and may be properly maintained on behalf of the

Class proposed herein under Federal Rule of Civil Procedure 23.

46.     Numerosity- The members of the Class are so numerous and geographically

dispersed that individual joinder of all Class members is impracticable. Plaintiffs are informed

and believe there are not less than hundreds of thousands of members of the Class, the precise

number of Class members is unknown to Plaintiffs, but may be ascertained from Volkswagen's

records. Class members may be notified of the pendency of this action by recognized, Court-

approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet

postings, and/or published notice.

47. Commonality and Predominance- This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

(a)      Whether Volkswagen is subject to federal laws regulating U.S. auto manufacturers;

(b)      Whether Volkswagen was subject to the investigation of the EPA and the State of Utah regarding the Subject Vehicles;

(c)      Whether Volkswagen designed, advertised, marketed, distributed, leased, sold, or otherwise placed Subject Vehicles into the stream of commerce in the United States;

(d)      Whether advertising and marketing of the Subject Vehicles during the relevant Claims Period was misleading;

(e)      Whether the CleanDiesel engine system in the Subject Vehicles contains a defect because it does not comply with EPA requirements;

(f)      Whether compliance with federal and state EPA requirements degrading the performance and/or efficiency of the Subject Vehicles;

(g)      Whether Volkswagen designed and installed a "defeat device" in the Subject Vehicles

(h)      Whether Volkswagen knowingly designed, manufactured, marketed, and distributed vehicles with a "defeat device";

(i)      Whether Volkswagen's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

(j)     Whether Plaintiffs and the other Class members have suffered cognizable damage;

(k) Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

(l) Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

48.     Typicality- The claims of the named Plaintiffs are typical of the claims of the class. Plaintiffs and all members of the class sustained injuries and damages arising out of and caused by Defendants' common course of conduct in violation of laws regulations with the force and effect of law and statutes as alleged herein. Plaintiffs' claims are based on the same legal theories as the claims of the unnamed members of the class. The legal issues and laws alleged to be violated by such conduct apply equally to Plaintiffs and all class members. All Class members were comparably injured through Volkswagen's wrongful conduct as described above.

49.     Adequacy- Plaintiffs will fairly and adequately represent and protect the interests of the members of the class. Counsel who represents Plaintiffs are competent and experienced in litigating class actions. Plaintiffs' interests do not conflict with the interests of the other members of the Class.

50.     Declaratory and Injunctive Relief-Volkswagen has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

51.    Superiority-A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class Members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Each member of the class has been damaged and is entitled to recovery by Defendants' illegal policy and/or practice.

52.    Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

### FIRST CAUSE OF ACTION
**Fraud (Common Law)**
**By Plaintiffs For Themselves and the Class**
**As Against Defendants and DOES 1 - 10**

53.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

54.    Volkswagen intentionally concealed and suppressed material facts concerning the quality and character of the Subject Vehicles. As alleged in this Complaint, Volkswagen engaged in deception to mislead consumers regarding the performance of the Subject Vehicles and the vehicles' compliance with federal and state vehicle emissions standards. Defendants concealed the vehicle deficiencies by installing software designed to only permit the emissions control systems to engage during emission tests, and intentionally programmed the vehicle so that at all times of operation it would not operate within compliance with the emissions standards.

55.    Each vehicle was installed with a "defeat device" designed to switch on the emission compliance systems only during emissions certification testing, such that the vehicles

would operate differently and emit far lower emissions than when operating on the road. Plaintiffs are informed and believe that the vehicles operated at a higher standard during normal operations than would otherwise be if the vehicle was EPA compliant. Instead, the Subject Vehicles passed emissions certifications by way of deliberately induced false readings. According to the EPA NOV (Exhibit A), Volkswagen's wrongful conduct resulted in emissions from these vehicles at 40 times the applicable standards.

56.     Plaintiffs and the Class members reasonably relied upon Volkswagen's false representations. Plaintiffs and the Class did not know and had no way of knowing that Volkswagen's representations were false and misleading. Volkswagen knowingly engaged in fraudulent concealment and employed a method of deception. Plaintiffs and Class members did not, and could not, discover Volkswagen's wrongdoing.

57.     Volkswagen's representations which were material to consumers, both because they concerned the quality of the Subject Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. Volkswagen knew that its customers, including Plaintiffs and Class members valued that the vehicles they were purchasing or leasing were clean diesel cars, in compliance will all state and federal mandates and they paid accordingly.

58.     Volkswagen knew the facts were unknown to or reasonably discoverable by Plaintiffs or Class members.

59.     Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles regarding performance and emissions standards,

starting with references to them as clean diesel cars, or cars with clean diesel engines, which were misleading, deceptive, and incomplete without disclosing the additional facts set forth above regarding its emissions deception, the actual emissions of its vehicles, its actual philosophy regarding compliance with federal and state clean air law and emissions regulations, and its actual practices regarding the vehicles at issue.

60.     Volkswagen failed to disclose that its diesel vehicles, including the Subject Vehicles could not achieve and maintain their expected performance criteria and comply with the federal and state emissions requirements.

61.     Having volunteered to provide information to Plaintiffs and the Class, Volkswagen had the duty to disclose the entire truth. These omitted and concealed facts were material because they directly affect the value of the Subject Vehicles purchased or leased by Plaintiffs and Class members. That a manufacturer's product will performed to their expected criteria only when not forced to comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth regarding such compliance or non-compliance, are material concerns to a consumer, including regarding the emissions certifications testing their vehicles must pass. Volkswagen represented to Plaintiffs and Class members that they were purchasing clean diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had thoroughly subverted the testing process.

62.     Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to increase sales and profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which

perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

63.    Upon investigation by federal and state officials, Defendants lied and misled the government regulators for at least 1 year.

64.    On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles and its emissions deception.

65.    Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps because of the information concealed from them. Plaintiffs' and Class members' actions were justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

66.    Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damages because they own vehicles which will require a cost to repair to bring the vehicles to emissions and performance requirements. Besides the cost of repair is that the vehicles are diminished in value because of Volkswagen's concealment of the true quality and quantity of those vehicles' performance and emissions standards and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands

of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiffs and Class members known of Volkswagen's emissions deceptions regarding the vehicles at issue, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

67.   The value of Plaintiffs' and Class members' vehicles has diminished because of Volkswagen's fraudulent concealment of its emissions deception, which has greatly tarnished the Volkswagen brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Subject Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

68.   Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial. As necessary, and in the alternative, Plaintiffs may allege sub-classes, based on the residences at pertinent times of members of the Class, to allege fraudulent concealment under the particular laws of those states.

69.   Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, to enrich Volkswagen. Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct, which amount is to be determined according to proof.

## SECOND CAUSE OF ACTION
**Civil Action (Utah Code § 78B-6-1701) for Communications Fraud (Utah Code § 76-10-1801)**
**By Plaintiffs For Themselves and the Utah Subclass**
**As Against Defendants and DOES 1 – 10**

70.     Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

71.     Plaintiffs bring this Count on behalf of the Utah Subclass.

72.     Utah Code § 78B-6-1701 provides that a person who has been injured by a violation Utah Code § 76-10-1801 (Communications Fraud) may recover treble damages, punitive damages, attorneys' fees, and costs from the perpetrator, regardless of whether the perpetrator is criminally tried or convicted under § 76-10-1801.

73.     The elements of § 76-10-1801 are that "Any person who has devised any scheme or artifice to defraud another or to obtain from another money, property, or anything of value by means of false or fraudulent pretenses, representations, promises, or material omissions, and who communicates directly or indirectly with any person by any means for the purpose of executing or concealing the scheme or artifice." Utah Code § 76-10-1801(1).

74.     Defendants perpetrated a communications fraud upon each member of the Utah Subclass by devising a scheme or artifice to defraud or obtain money or other things of value from the Utah Subclass by means of false or fraudulent pretenses, representations, promises, or material omissions, and who communicated directly or indirectly with any person by any means for the purpose of executing or concealing the scheme or artifice

75.     Specifically, Defendants devised a scheme to obtain money and contracts promising money from the Utah Subclass for vehicles that Defendants knew did not comply with emissions requirements and which, if not equipped with "defeat devices," would not achieve the performance and gas mileage represented by Volkswagen.

76.     The pretenses, representations, promises, or material omissions made or omitted by Defendants as previously alleged were made or omitted intentionally, knowingly, or with a reckless disregard for the truth.

77.     Defendants used a variety of means of communication to communicate with Plaintiffs and the Utah subclass the benefits of the Subject vehicles as it related to the "clean emissions" and superior miles per gallon performance and engine power, including internet, television, radio, newspaper, and billboard advertising, as well as in vehicle documentation and warranties, and on Subject Vehicle window stickers.

78.     Under Utah Code § 76-10-1801(3) "Reliance on the part of any person is not a necessary element of the offense described in in Subsection (1)."

79.     Under Utah Code § 76-10-1801(4), "An intent on the part of the perpetrator of any offense described in Subsection (1) to permanently deprive any person of property, money, or thing of value is not a necessary element of the offense."

### THIRD CAUSE OF ACTION
**Negligent Misrepresentation (Common Law)**
**By Plaintiffs For Themselves and the Class**
**As Against Defendants and DOES 1 – 10**

80.      Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

81.     Volkswagen negligently failed to disclose material facts concerning the quality, performance and compliance of the Subject Vehicles. As alleged in this Complaint, Volkswagen misled consumers regarding the performance of the Subject Vehicles and the vehicle's compliance with federal and state vehicle emissions standards. Defendants failed to disclose the vehicle deficiencies by installing software designed to only permit the emissions control systems

to engage during emission tests, and negligently programed the vehicle so that at times of non-tested operation, it would not operate within compliance with the emissions standards.

82.     Each vehicle was installed with a "defeat device" designed to switch on the emission compliance systems only during emissions certification testing, such that the vehicles would operate differently and emit far lower emissions than when actually operating on the road. As a result the vehicles operated at a higher standard than would otherwise be if the vehicle was EPA compliant. Instead, the Subject Vehicles passed emissions certifications by way of deliberately induced false readings. According to the EPA NOV (Exhibit A) Volkswagen's wrongful conduct resulted in emissions from these vehicles at 40 times the applicable standards.

83.     Plaintiffs and the Class members reasonably relied upon Volkswagen's representations that the vehicles complied with U.S. laws. Plaintiffs and the Class did not know and had no way of knowing that Volkswagen's representations were false and misleading. Volkswagen negligently failed to disclose. Plaintiffs and Class members did not, and could not, discover Volkswagen's wrongdoing.

84.     Plaintiffs justifiably relied on Volkswagen's representations which were material to consumers, both because they concerned the quality of the Subject Vehicles, including their compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. Volkswagen knew that its customers, including Plaintiffs and Class members, valued that the vehicles they were purchasing or leasing were clean diesel cars in compliance will all state and federal mandates, and they paid accordingly.

85.     Volkswagen knew the facts were unknown to or reasonably discoverable by Plaintiffs or Class members.

86.     Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles regarding performance and emissions standards, starting with references to them as clean diesel cars, or cars with clean diesel engines, which were misleading, deceptive, and incomplete without disclosing the additional facts set forth above regarding its emissions deception, the actual emissions of its vehicles, its actual philosophy regarding compliance with federal and state clean air law and emissions regulations, and its actual practices regarding the vehicles at issue.

87.     Volkswagen failed to disclose that its diesel vehicles, including the Subject Vehicles could not achieve and maintain their expected performance criteria and comply with the federal and state emissions requirements.

88.     Having volunteered to provide information to Plaintiffs and the Class, Volkswagen had the duty to disclose the entire truth. These omitted and concealed facts were material because they directly affect the value of the Subject Vehicles purchased or leased by Plaintiffs and Class members. That a manufacturer's product will performed to their expected criteria only when not forced to comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth regarding such compliance or non-compliance, are material concerns to a consumer, including regarding the emissions certifications testing their vehicles must pass. Volkswagen represented to Plaintiffs and Class members that they were purchasing clean diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had thoroughly subverted the testing process.

27

89.     Volkswagen negligently omitted and/or suppressed these material facts, in whole or in part, to increase sales and profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiffs and Class members.

90.     Upon investigation by federal and state officials, Defendants misled government regulators for at least 1 year.

91.     Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps because of the information concealed from them. Plaintiffs' and Class members' actions were justified. Volkswagen was in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

92.     Because of the negligent concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damages because they own vehicles which will require a cost to repair to bring the vehicles to emissions and performance requirements. Besides the cost of repair is that the vehicles are diminished in value because of Volkswagen's concealment of the true quality and quantity of those vehicles' performance and emissions standards and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by

Volkswagen's corporate policies. Had Plaintiffs and Class members known of Volkswagen's

emissions deceptions regarding the vehicles at issue, Plaintiffs and Class members who

purchased or leased new or certified previously owned vehicles would have paid less for their

vehicles or would not have purchased or leased them at all.

93.     The value of Plaintiffs' and Class members' vehicles has diminished because of

Volkswagen's fraudulent concealment of its emissions deception, which has greatly tarnished the

Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and

made any reasonable consumer reluctant to purchase any of the Subject Vehicles, let alone pay

what otherwise would have been fair market value for the vehicles. Volkswagen is liable to

Plaintiffs and Class members for damages in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION
**Violation of Utah Consumer Sales Practices Act, Utah Code §§ 13-11-1, et seq.**
**By Plaintiffs For Themselves and the Utah Subclass**
**As Against Defendants and DOES 1 – 10**

94. Plaintiffs incorporate herein by reference, as though fully set forth at length, each and

every allegation and statement contained in the foregoing paragraphs.

95.     Plaintiffs bring this Count on behalf of the Utah Subclass.

96.     Utah's Consumer Sales Practice Act, Utah Code § 13-11-4(1) proscribes that "A

deceptive act or practice by a supplier in connection with a consumer transaction violates this

chapter whether it occurs before, during, or after the transaction."

97.     "[A] supplier commits a deceptive act or practice if the supplier knowingly or

intentionally: (a) indicates that the subject of a consumer transaction has sponsorship, approval,

performance characteristics, accessories, uses, or benefits, if it has not; (b) indicates that the

subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not."

98.     Volkswagen's misrepresentations and omissions alleged herein caused Plaintiffs and the other Utah Subclass members to make their purchases or leases of their Subject Vehicles. Absent those misrepresentations and omissions, Plaintiffs and the other Utah Subclass members would not have purchased or leased these Subject Vehicles, would not have purchased or leased these Subject Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain CleanDiesel engine systems.

99.     Plaintiffs and the other Utah Subclass members have suffered injury in fact including lost money or property because of Volkswagen's misrepresentations and omissions.

100.     Plaintiffs seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices  by Volkswagen under Utah Code § 13-11-19.

101.     Plaintiffs request this Court enter such orders or judgments as may be necessary to enjoin Volkswagen from continuing its unfair, unlawful, and/or deceptive practices, to award damages in an amount to be proven at trial, and for such other relief set forth below.

**FIFTH CAUSE OF ACTION**
**Negligence**
**By Plaintiffs For Themselves and the Class**
**Against Defendants and DOES 1 through 10**

102.     Plaintiffs incorporate herein by reference, as though fully set forth at length, each and every allegation and statement contained in the foregoing paragraphs.

103.     Defendants, including their employees, agents, directors, officers, stockholders, partners and associates, had a legal duty to conform their conduct under the law and that of a reasonable person, which includes adequately and properly managing and operating their

business and their manufacturing, design, warning, distribution, and retail operations; adequately and properly training and supervising their employees and agents, including their designers, inspectors, quality control agents and other manufacturing, testing, distribution and delivery personnel; properly designing, manufacturing, warnings, inspecting, servicing, and distributing the Subject Vehicles; and acting without negligence, conscious disregard, despicable or other wrongful conduct.

104.    Defendants, including their employees, agents, directors, officers, stockholders, partners and associates knew or should have known that the Subject Vehicles was defectively designed.

105.    Defendants, including their employees, agents, directors, officers, stockholders, partners and associates knew or should have known that the Subject Vehicles was defectively designed and/or manufactured and failed to meet minimum regulatory requirements.

106.    Defendants, including their employees, agents, directors, officers, stockholders, partners and associates, failed to exercise ordinary care and breached their duty by:

a.    Failure to use due care in the manufacture, distribution, design, sale, marketing testing, and servicing of the Subject Vehicles and their component parts;

b.    Failure to provide adequate warning of the defects; and,

c.    Were otherwise careless or negligent.

107.    As a direct and proximate result of defects in the Subject Vehicles and the wrongful conduct, acts, omissions, and fraudulent misrepresentations of Defendants, Plaintiffs suffered damages as alleged herein.

108.     Plaintiffs are entitled to damages in an amount to be proven at trial, together with interest thereon and costs.

**SIXTH CAUSE OF ACTION**
**Breach of Express Warranty of Merchantability**
**By Plaintiffs For Themselves and the Class**
**Against Defendants and DOES 1 through 10**

109.     Plaintiffs incorporate by reference every prior and subsequent allegation of this Complaint as if fully restated here.

110.     Defendant made numerous representations, descriptions, and promises to Plaintiffs and Class members regarding the performance and emission controls of its diesel vehicles.

111.     Defendant, however, knew or should have known that its representations, descriptions, and promises were false. Defendant knew that it had installed defeat devices in the vehicles it sold to Plaintiffs and Class members.

112.     Plaintiffs and Class members reasonably relied on Volkswagen's representations in purchasing "clean" diesel vehicles. Those vehicles, however, did not perform as warranted. Unbeknownst to Plaintiffs, those vehicles included devices that caused their emission reduction systems to perform at levels worse than advertised. Those devices are defects. Volkswagen breached its express warranty by providing a product containing defects that were never disclosed to the Plaintiffs and Class members.

113.     As a direct and proximate result of Volkswagen's false and misleading representations and warranties, Plaintiffs and Class members suffered significant damages and seek the relief described herein.

**SEVENTH CAUSE OF ACTION**

**Breach of Implied Warranty of Merchantability**
**By Plaintiffs For Themselves and the Class**
**Against Defendants and DOES 1 through 10**

114.    Plaintiffs incorporate by reference every prior and subsequent allegation of this Complaint as if fully restated here.

115.    Before of the incident, the Defendants impliedly warranted to members of the general public, including Plaintiffs, that the Subject Vehicles were of merchantable quality.

116.    Members of the consuming public, including consumers such as Plaintiffs were intended third-party beneficiaries of the implied warranty of merchantability.

117.    Plaintiffs relied on the skill and judgment of Defendants in the selection, purchase and use of the Subject Vehicles as a safe and reliable means for transportation.

118.    The Subject Vehicles were not of merchantable quality as warranted by Defendants because it was defectively designed and manufactured as previously alleged.

119.    Upon notice of the damages as complained of herein, notice was given by Plaintiffs to Defendants by suing in the time and in the manner and in the form prescribed by law, of the breach of said implied warranty.

120.    As a legal and proximate result of the breach of said implied warranty, Plaintiffs sustained the damages herein set forth.

121.    Plaintiffs are entitled to damages in an amount to be proven at trial, together with interest thereon and costs.

**EIGHTH CAUSE OF ACTION**
**Magnuson Moss Warranty Act, (15 U.S.C. § 2301 et seq.)**
**By Plaintiffs For Themselves and the Class**
**Against Defendants and DOES 1 through 10**

122.     Plaintiffs incorporate herein by reference, as though fully set forth at length, each and every allegation and statement contained in the foregoing paragraphs.

123.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301, et seq. by 15 U.S.C. §2310(d).

124.     Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

125.     Volkswagen is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

126.     The Subject Vehicles, and each of them, is a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

127.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer damaged by the failure of a warrantor to comply with a written or implied warranty.

128.     Volkswagen's implied warranties are covered under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

129.     Volkswagen breached these implied warranties by providing the Subject Vehicles: a) that was not of merchantable quality; b) that presented an unreasonable risk of unintended acceleration; c) that was not fit for the ordinary purpose for which vehicles are used; and, d) that was not fully operational, safe, or reliable.

130.     Privity is not required because Plaintiffs are intended third-party beneficiaries of contracts between Volkswagen and its dealers; specifically, they are the intended beneficiaries of Volkswagen's implied warranties. The dealer was not intended to be the ultimate consumer of, nor a passenger in, the Subject Vehicles and has no rights under the warranty agreements

34

provided with the Subject Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers and passengers only.

131.     Requiring an informal dispute settlement procedure, or affording Volkswagen a reasonable opportunity to cure its breach of warranties, would be unnecessary and futile. At the time of sale or lease of the Subject Vehicles, Defendants knew, should have known, or were reckless in not knowing, of its misrepresentations concerning the Subject Vehicles' inability to perform as warranted, but failed to rectify the situation and/or disclose the defective deign. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement – whether under the Magnuson-Moss Warranty Act or otherwise – that Plaintiffs resort to an informal dispute resolution procedure and/or afford Volkswagen a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

132.     Because of Volkswagen's breach of implied warranties, Plaintiffs suffered economic losses, including cost of repair, diminution in value and other economic damages and losses.

133.     Plaintiffs are entitled to damages in an amount to be proven at trial, together with interest thereon and costs.

## NINTH CAUSE OF ACTION
### Unjust Enrichment
### By Plaintiffs For Themselves and the Class
### Against Defendants and DOES 1 through 10

134.     Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

135.    Plaintiffs and members of the Class conferred a benefit on Defendant by using (and paying for) its vehicles.

136.    Defendant has retained this benefit, and know of and appreciate this benefit.

137.    Defendant was and continues to be unjustly enriched at the expense of Plaintiffs and Class members.

138.    Defendant should have to disgorge this unjust enrichment.

**TENTH CAUSE OF ACTION**
**Violation of Implied Warranty of Merchantability (Utah Code § 70A-2-314)**
**By Plaintiffs For Themselves and the Utah Subclass**
**As Against Defendants and DOES 1 – 10**

139.    Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

140.    Plaintiffs bring this Count on behalf of the Utah Subclass.

141.    Utah Code § 70a-2-314 proscribes that "Unless excluded or modified (Section 70A- 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the  seller is a merchant with respect to goods of that kind."

142.    "Goods to be merchantable must be at least such as (a) pass without objection in the trade under the contract description; and (b) in the case of fungible goods, are of fair average quality within the description; and (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any.

143. A warranty that the Subject Vehicles were in merchantable condition was implied by law in the instant transaction, under Utah Code § 70a-2-314.

144. These Subject Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.

145. Specifically, the Subject Vehicles are inherently defective because they do not comply with federal and state emissions standards, rendering certain safety and emissions functions inoperative; and the CleanDiesel engine system was not adequately designed, manufactured, and tested.

146. Volkswagen was provided notice of these issues by the investigations of the EPA and individual state regulators.

147. Plaintiffs and the other class members have had sufficient direct dealings with either Volkswagen or their agents (dealerships) to establish privity of contract between Plaintiffs and the other class members. Notwithstanding this, privity is not required in this case because Plaintiffs and the other class members are intended third-party beneficiaries of contracts between Volkswagen and its dealers; specifically, they are the intended beneficiaries of Volkswagen's implied warranties. The dealers were not intended to be the ultimate consumers of the Subject Vehicles and have no rights under the warranty agreements provided with the Subject Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiffs and the other class members' Subject Vehicles are dangerous instrumentalities due to the defects and nonconformities.

148.    As a direct and proximate result of Volkswagen's breach of the warranties of

merchantability, Plaintiffs and the other Utah subclass members have been damaged in an

amount to be proven at trial.

**ELEVENTH CAUSE OF ACTION**
**Breach of Contract**
**By Plaintiffs For Themselves and the Utah Subclass**
**As Against Defendants and DOES 1 – 10**

149.    Plaintiffs incorporate by reference each and every prior and subsequent allegation

of this Complaint as if fully restated here.

150.    Plaintiffs bring this Count on behalf of the Utah Subclass

151.    Volkswagen's misrepresentations and omissions alleged herein, including

Volkswagen's failure to disclose the existence of the "defeat device" and/or defective design as

alleged herein, caused Plaintiffs and the other Utah Subclass members to make their purchases or

leases of their Subject Vehicles.  Absent those misrepresentations and omissions, Plaintiffs and the

other Utah Subclass members would not have purchased or leased these Subject Vehicles, would

not have purchased or leased these Subject Vehicles at the prices they paid, and/or would have

purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel

engine system and the "defeat device." Plaintiffs and the other Utah Subclass members overpaid

for their Subject Vehicles and did not receive the benefit of their bargain

152.    Every sale or lease of an Affected Vehicle constitutes a contract between

Volkswagen and the purchaser or lessee. Volkswagen breached these contracts by selling or

leasing Plaintiffs and the other Utah Subclass members defective Subject Vehicles and by

misrepresenting or failing to disclose the existence of the "defeat device" and/or defective

design, including information known to Volkswagen rendering each Affected Vehicle less safe

38

and emissions compliant, and less valuable, than vehicles not equipped with CleanDiesel engine systems and "defeat devices."

153.    As a direct and proximate result of Volkswagen's breach of contract, Plaintiffs and the Utah Subclass have been damaged in an amount to be proven at trial, which will include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs, individually and on behalf of members of the Class request that the Court enter judgment in their favor and against Volkswagen, as follows:

1.    That the case be certified as a Rule 23 class action, including appointment of Plaintiffs' counsel as Class Counsel;.

2.    An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

3.    Injunctive relief in the form of a recall or free replacement programs;

4.    Costs, restitution, damages, and disgorgement in an amount to be determined at trial;

5.    Revocation of acceptance;

6.    Damages under the Magnuson-Moss Warranty Act;

7.    For treble and/or punitive damages as permitted by applicable laws;

8.    An order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

9.    An award of costs and attorneys' fees; and

10.     Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.


DATED: September 23, 2015.

PINPOINT LAW, PLLC

_____/s/ Mark S. Schwarz_____
Mark S. Schwarz, *Attorney for Plaintiffs and
the proposed class*